IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW MADRID,<br><br>Defendant. | Crim. No. 23-00102-MWJS-EPG<br><br>ORDER ON MOTIONS *IN LIMINE* |

**ORDER ON MOTIONS *IN LIMINE***

Defendant Andrew Madrid and several others are charged in a superseding indictment with fentanyl-related drug trafficking offenses. Dkt. No. 70. Count One charges that Madrid and his co-defendants conspired between around September 1, 2022, and June 13, 2023, to distribute and possess with intent to distribute fentanyl. *Id.* at pgs. 1–2. Count Ten charges that Madrid—together with his brother, Arturo Madrid—distributed fentanyl on about April 21, 2023. *Id.* at pg. 5. But while Madrid's co-defendants (including Arturo) are charged in several other counts, including firearm-related offenses, Madrid is not. And while Madrid's co-defendants are charged with drug quantities giving rise to mandatory minimum penalties, Madrid is not.

Another difference between Madrid and his co-defendants is that each of his co-defendants has pled guilty, while Madrid is scheduled to begin trial on September 22,

2026. In advance of trial, the government and Madrid have filed timely motions *in limine* seeking pretrial rulings on certain evidentiary disputes. As we shall see, many of these motions raise issues concerning Arturo—who apparently might be called as a witness at trial—as well as charges and evidence more directly relevant to Madrid's co-defendants. Unsurprisingly, the government contends that much of this evidence is fair game, whereas Madrid argues that much of it should be excluded.

The court heard argument on these motions on September 14, 2026. Having carefully considered the parties well-written motions papers and their effective oral advocacy, the court now rules on the pending motions.

## I. The Government's Motions *in Limine*

### A. Motion *in Limine* No. 1 [Dkt. No. 337]

In its first motion *in limine*, the government seeks to impeach Madrid and Arturo with prior felony convictions. The motion is DENIED as premature.

#### 1. Factual Background

The government points to two prior felony convictions for Arturo. The first is an October 2021 conviction in state court for Possession of a Firearm by a Convicted Person, in violation of California Penal Code § 29815. The second is Arturo's 2025 conviction in this case, arising out of his plea of guilty, pursuant to a plea agreement with the government, to Count Ten (the same April 21, 2023, distribution charge still pending against Madrid) and Count Eight (which charged him with being a felon in

possession of a firearm on March 17, 2023), and for which he was sentenced principally to 135 months' imprisonment.

The government seeks to use a single prior felony conviction against Madrid: a February 2023 conviction in California state court for Taking or Driving a Vehicle without the Owner's Consent, in violation of California Vehicle Code § 10851(a). That section provides that "[a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense and, upon conviction thereof, shall be punished by imprisonment . . . for not more than one year." Cal. Veh. Code § 10851(a). The section thus "proscribes a wide range of conduct," from "taking a vehicle with the intent to steal it" to "driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding)." *People v. Garza*, 35 Cal. 4th 866, 876, 111 P.3d 310, 315 (Cal. 2005) (cleaned up).

The government also has proffered some additional materials that arguably suggest Madrid was specifically convicted of "taking" a vehicle—an offense that more closely resembles a crime of theft—though Madrid disputes the point, and there is ambiguity over whether the conviction might merely reflect a taking for a short period of time (with the intention of returning the property).

**2. Relevant Legal Standards**

The "common-law rule of 1789" was that "witnesses convicted of crime" were incompetent to testify. *Rosen v. United States*, 245 U.S. 467, 471 (1918). But our modern conviction is that "the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury." *Id*. This modern approach is reflected in Federal Rule of Evidence 601, which generally provides that "[e]very person is competent to be a witness," and Federal Rule of Evidence 609, which provides four rules for "attacking a witness's character for truthfulness by evidence of a criminal conviction" in a criminal case.

The first is that, when "the witness is not a defendant," any felony conviction "*must* be admitted, subject to Rule 403." Fed. R. Evid. 609(a)(1)(A) (emphasis added). This means that the court is compelled to admit a felony conviction against a non-defendant witness unless, as Rule 403 provides, the "probative value" of the conviction as impeachment "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Second, when "the witness is a defendant," any felony conviction "*must* be admitted" if "the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 60(a)(1)(B). Unlike under Rule 403—which requires exclusion

only if unfair prejudice *substantially* outweighs the probative value—here the scales are balanced, and exclusion follows if the unfair prejudice is at least the equal of the probative value.

The third and fourth rules are not directly relevant here, but it bears describing them, if for no other reason than the contrast they provide with the prior two. Under Federal Rule of Evidence 609(a)(2), any conviction, whether a felony or misdemeanor, is automatically admitted for impeachment—without any balancing of unfair prejudice, and regardless of whether the witness is the defendant—if the offense contains an element that requires proof of a dishonest act or false statement. And under Federal Rule of Evidence 609(b), if more than ten years have passed since a conviction (or release from confinement for it), it is "admissible only if" the "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Rule 609(b) thus tilts the scales in favor of exclusion when a conviction is stale, just as the tandem of Rule 609(a)(1)(A) and Rule 403 tilts the scales in favor of admission when a conviction is a felony and concerns a non-defendant.

**3. Discussion**

Before admitting any of the prior convictions at issue, the court will need to conduct a balancing analysis, weighing the probative value against the risk of unfair prejudice. That analysis will need to carefully consider how a witness testifies. If a witness attempts to portray himself as having no criminal history, then the prior

convictions will be powerful impeachment evidence: "the government is not required to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." *United States v. Browne*, 829 F.2d 760, 764 (9th Cir. 1987) (cleaned up); *accord United States v. Jones*, 151 F.4th 1235, 1244 (10th Cir. 2025) (citing *Browne* and affirming the admission of a felon-in-possession conviction against a defendant who was "downplaying his criminal record" in an effort to "bolster his trustworthiness before the jury"). If the witness's testimony turns out to be inconsequential, or cumulative of other evidence, then the balancing analysis could swing in the other direction. A prior conviction offered to impeach an unimportant or cumulative witness may well prove to be a waste of the jury's time.

For these reasons, the court declines to make a pretrial ruling on whether any of the prior felony convictions will be admissible for impeachment purposes. At this stage, the court has not seen or heard any of the government's evidence; it does not know what other witness testimony is available to either party; it, of course, has not yet heard the direct examination of either Madrid or Arturo; and, indeed, the parties do not conclusively say which side (if either) would even call Arturo in the first place. If either Madrid or Arturo is called to testify, the court will confer with counsel at sidebar after their direct examination, with the intention of making a definitive ruling before cross-examination begins.

The court has, however, benefitted from the government's decision to file this motion (as it has benefited from the parties' filing of all other motions *in limine*). Even if a motion *in limine* is denied as premature, it can still aid the court in preparing for issues the parties anticipate will arise during trial—and that is precisely what has happened here. The court can also, in response to a well-briefed motion, offer some tentative guidance. And that is also the case here.

As to Arturo, it is highly likely the court will allow the government to cross-examine him with his 2021 felony conviction. Although a "felon-in-possession conviction may have low impeachment value in the abstract," *Jones*, 151 F.4th at 1244, Arturo's testimony is likely to be important if he is indeed called to testify. If called by the government, Arturo presumably would inculpate Madrid, either for the drug trafficking conspiracy charge, the substantive distribution charge, or both.[1] If called by Madrid, he presumably would exculpate Madrid. Given the importance of this possible testimony—whichever way it cuts—even impeachment with low probative value is likely to be significant. And given the limited nature of the evidence that would be admitted to establish Arturo's prior conviction—and the fact that a limiting instruction

[1] It is well-settled that the government cannot call a co-defendant for the primary purpose of impeaching him with otherwise inadmissible testimony—that is, "impeachment is not permitted where it is employed as a guise for submitting to the jury substantive evidence that is otherwise unavailable." *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990) (cleaned up). For that reason, the court is confident that the government will only call Arturo if it expects that he will incriminate Madrid.

can be provided about the appropriate use of the conviction once it is admitted—the court is not likely to conclude, after hearing Arturo's testimony, that the "probative value" of the conviction as impeachment "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The court is also likely to allow impeachment with Arturo's 2025 conviction, though the analysis here is somewhat more complicated. Given that Arturo pled guilty to Count Eight—one of the two counts with which Madrid is charged—there is a greater risk of unfair prejudice for Madrid if the 2025 conviction is admitted. But here again, only limited information need be provided to the jury about that conviction. For example, it may be sufficient for Arturo simply to be asked whether he pled guilty to the drug distribution offense charged in Count Eight, and whether he also pled guilty to a firearm offense. Assuming Arturo honestly acknowledges that he did, the jury need not be told that he was "convicted" of these charges—which might suggest that a judge or jury found him to be guilty through a fact-finding process going beyond Arturo's own guilty plea—or that the charges to which he pled were charged in this same case. At the hearing on this motion, government counsel agreed that this would be an appropriate course to take.

And as to Count Eight in particular, it stands to reason, given his prior plea of guilty, that Arturo will need to admit that he committed the offense in order to testify

truthfully. (That is wholly apart from whether Arturo then proceeds to inculpate or exculpate Madrid for that same offense). This means that if Arturo is called by Madrid, Arturo will need to admit that he *did* commit the offense charged in Count Eight alongside any testimony that Madrid *did not*. Once Arturo testifies—in response to Madrid's own questioning—that he in fact committed the offense charged in Count Eight, there is little risk of unfair prejudice in allowing the government to present evidence (possibly in as limited a form as a set of questions for Arturo himself) that Arturo has already pled guilty to that count. On the other hand, the jury would not be able to fairly or accurately evaluate the veracity of Arturo's testimony if it is given the false impression that Arturo remains at risk of being prosecuted for Count Eight—an impression that could unfairly lead the jury to conclude that Arturo has bravely testified against penal interest to exonerate Madrid.[2]

Madrid's prior felony conviction is the closest call. The balancing analysis here is not the Rule 403 analysis—whether probative value is substantially outweighed by the risk of unfair prejudice. Instead, the government bears the burden of showing that "the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). Courts in the Ninth Circuit consider five factors as part of this

---

[2] Indeed, for these very reasons, it would be highly probative impeachment for the government to elicit—if true—that Arturo never reported to the government that he alone committed Count Eight (without Madrid's knowledge or assistance) at any point before he had wrapped up his own exposure for the crime.

balancing analysis: "(1) the impeachment value of the prior crime; (2) the point in time of conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility." *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995).[3]

The court can assess the second of these factors individually now. As Madrid acknowledges, this second factor weighs in favor of admissibility because Madrid's 2023 conviction is very recent. After all, "[b]y its terms, Rule 609 allows for admissibility of such . . . prior conviction[s] even where the defendant has been released for up to ten years." *Alexander*, 48 F.3d at 1488 (citation omitted).

The remaining factors can only be provisionally considered. The first factor is likely to weigh in favor of admission, though not strongly. As noted, it remains unclear precisely what underlying conduct Madrid's conviction represents. Perhaps it represents a finding that Madrid *took* a vehicle, as opposed to merely *driving* one, without an owner's consent. But that point remains hotly disputed, and the court has not yet received sufficient briefing to resolve it. And even if Madrid took a vehicle, it remains unclear whether the conviction merely represents a brief or temporary taking

---

[3] And, as noted earlier, when a conviction is more than ten years old, the government's burden under Federal Rule of Evidence 609(b) is to show, under these factors, "that the evidence's probative value *substantially* outweighs its prejudicial effect." *Alexander*, 48 F.3d at 1488. Since Madrid's conviction is from 2023, that heightened burden does not apply here.

with the intention of returning it (as the statutory language suggests might be the case). A conviction for taking a vehicle but intending its return may reflect on a person's propensity to tell the truth, but it is not obvious that that reflection is a strong one. Nonetheless, Madrid's testimony could, depending on how it goes, end up increasing the probative value of his prior conviction—for example, if he were in any way to "misrepresent his character or to testify falsely as to his prior criminal record," the impeachment value of his prior conviction would become extremely strong. *Alexander*, 48 F.3d at 1489. The bottom line is that this first factor likely requires additional briefing from the parties (which the government is invited to submit in advance of Madrid's possible testimony) and likely cannot be adequately assessed until the court has heard Madrid's direct examination.

Madrid disputes that the third factor—similarity between the past crime and the charged crime—weighs in favor of admissibility, but at least on the present record, his argument does not appear persuasive. Madrid contends that because he is said to have been in a vehicle at the time of the offense charged in Count Eight—and because "vehicles and their occupants recur throughout [the government's] proof"—a jury confronted with his 2023 conviction for taking or driving a vehicle could come to the conclusion that "a man who once took a car was up to no good in one." Dkt. No. 346, at pg. 6. That is too much of a stretch, at least on the information currently before the court. Madrid does not suggest that the government will offer any evidence of cars

being taken or driven without the owner's consent. And at the hearing on the motion, government counsel indicated that it did not expect any such evidence would be offered. Lacking any reason to believe that the jury will hear evidence of any stolen cars being used in the commission of charged offenses, the mere fact that Madrid will be shown to have traveled in a car is not enough to make his prior conviction similar to the current charges—any more than a person previously convicted of a burglary could suggest that his prior conviction is too similar to his current charges because he will be shown to have committed the new charges in homes in which he presumably had permission to be present. Nonetheless, the court will carefully consider this factor after hearing the evidence at trial. It cannot render a definitive analysis of this factor now.

Likewise, the fourth and fifth factors—the importance of Madrid's testimony and the centrality of his credibility—cannot adequately be evaluated now. It remains unclear what other witnesses are available to the government, whether other witnesses will cover the same ground as any testimony Madrid offers, and exactly what Madrid's own testimony will be if he testifies. The importance of Madrid's testimony (*i.e.*, how important it is for the jury to hear it, which may cut against allowing impeachment with a prior felony conviction if it could push Madrid toward not testifying) and how central Madrid's credibility will be (*i.e.*, whether he testifies that he did not committed the charged offenses, such that a central task for the jury will be to weigh his credibility, which in turn will weigh in favor of allowing impeachment with his prior conviction)

are still up in the air. That said, in evaluating these factors after hearing the government's evidence and Madrid's direct examination, the court will be mindful of the Ninth Circuit's observation that "[w]hen a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue." *Alexander*, 48 F.3d at 1489.

Although the court offers the above guidance on Arturo and Madrid, its analysis is necessarily tentative and incomplete. In this pretrial posture, and on the record presented here, the court cannot adequately assess the probative value of prior convictions for impeachment purposes or the risk of unfair prejudice in allowing that evidence. And so, for that reason, the court DENIES the government's Motion *in Limine* No. 1 as premature. *Accord United States v. Farley*, 2015 WL 6871920, at *13 (N.D. Cal. Nov. 9, 2015) (denying, for similar reasons, a motion *in limine* "as premature").

**B. Motion *in Limine* No. 2 [Dkt. No. 338]**

The court will also deny the government's second motion *in limine* as premature. In this motion, the government argues that the court should admit certain radio communications—especially but not limited to those of Sergeant Hutsell, who has since passed away—as present sense impressions and as non-testimonial statements. There is a good chance the court will admit at least some of these communications, but as Madrid rightly argues, these decisions must be made on a statement-by-statement basis.

The court can provide some guidance, however. As a starting point, in analyzing any statement for admissibility as a present sense impression, the court will consider whether the declarant is "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). And if "surveillance officers" are "providing a description of the events at the same time they were witnessing them," the statements are "admissible under the present sense impression exception" to the hearsay rule. *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995); *see also id.* (noting that such statements "easily satisfy the requirements of this exception"). In making this determination, the court will consider the content of the statement (which itself might be enough to show that it is a present sense impression), along with all of the attendant circumstances. As discussed at the hearing on this motion, the court encourages the government to submit, prior to the start of trial, a transcription of the statements it intends to offer as present sense impressions, so that the court can examine these statements on a more individualized basis before the jury is sworn.

The further question is whether statements, even if qualifying as present sense impressions, are nonetheless testimonial and therefore barred by the Confrontation Clause. That is because "the admissibility of a statement under a hearsay exception is not controlling with respect to Confrontation Clause analysis." *United States v. Solorio*, 669 F.3d 943, 953 (9th Cir. 2012). Although the court recognizes that the Ninth Circuit's

decision in *Solorio* was made in a plain error posture, it nonetheless finds that the Ninth Circuit's reasoning in that case is a persuasive way to frame the issues here. The court there recognized that "statements made out-of-court with a primary purpose other than possible prosecutorial use are nontestimonial." *Id.* If the record supports the conclusion that any out-of-court statements were "formally recorded . . . in order that they could be used for prosecution purposes, to create a record for trial, if necessary," those statements will be testimonial. *Id.* If, on the other hand, the record better supports the view that "agents communicated their observations to the other agents to ensure the success and safety of the operation, by assuring that all agents involved knew what was happening and enabling them to gauge their actions accordingly," then the statements are non-testimonial. *Id.*

In evaluating on which side of the line any statement falls, the court will consider whether the operation at issue "was a high-risk situation involving the exchange of a large amount of money and a substantial quantity of drugs." *Id.* It will further consider whether the exchange took place in a "location that [the defendant or his alleged co-conspirators] had selected, presumably because it placed [them] at a strategic advantage should anything go wrong." *Id.* It will also consider whether the evidence supports law enforcement concerns about whether any alleged co-conspirators were armed or might react violently to any discovery that law enforcement was involved. *Id.* The court's analysis will not, however, be limited to these factors that happened to be

relevant in *Solorio*. The overarching question is whether there was an ongoing danger to law enforcement personnel—akin to an "ongoing emergency"—that had the "effect of focusing an individual's attention on responding" to the danger. *Id.* (citation omitted). If, "objectively assessed, the primary purpose of the agents' statements was assuring that [an ongoing law enforcement operation] both succeeded and did not escalate into a dangerous situation, not to create a record for trial," then there will be no Confrontation Clause impediment to offering the statements at trial. *Id.* (cleaned up).

All that said, the court cannot conduct this analysis in a blanket or categorical fashion, but instead must assess each statement the government offers, as well as the surrounding context and the totality of the circumstances, to determine the primary purpose of each statement at issue. The government's second motion *in limine* is therefore DENIED as premature.

## II. Defendant's Motions *in Limine*

### A. Motion *in Limine* No. 1 [Dkt. No. 339]

Madrid's first motion *in limine* principally seeks to exclude "any evidence, testimony, exhibits, or argument concerning the firearms-related counts charged against his co-defendants." Dkt. No. 339, at pg.1. Since the filing of the motion, and as confirmed at the hearing on this motion, the parties have agreed that the jury will not receive a copy of the superseding indictment for its deliberations. Madrid has recognized that that addresses some of his concern. The court's broader reaction to this

motion, however, is that the evidence underlying the firearms-related counts is relevant, under Federal Rule of Evidence 401, because firearms are a well-recognized tool of the trade of drug trafficking. In this case, moreover, the government proffers that it will present evidence that Madrid was present when both drugs and firearms were distributed. That evidence bears on Madrid's understanding of the nature and scope of the conspiracy he is alleged to have joined, as well as the existence of the conspiracy in the first place. Some amount of evidence of this kind is, therefore, properly offered. But as the court explained during the hearing on the motion, it will carefully monitor what is presented to the jury and will entertain a contemporaneous objection under Federal Rule of Evidence 403 if the government's firearm-related evidence threatens to become excessive. For now, this aspect of the motion is DENIED as premature.

Madrid separately asks that the government be precluded from referring to a firearm exchanged on April 21, 2023, as a "machinegun" or "assault rifle." This request is premature. The government recognizes that any description of a firearm that it offers through witness testimony or jury argument must be grounded in the evidence. The court will entertain contemporaneous objections if there is any risk that the government is not abiding by this expectation. But the court concludes that it is premature to enter any order of this kind now. This request is therefore DENIED as premature.

One aspect of Madrid's motion is persuasive, however, as well as unopposed. He argues that if the government offers any evidence of firearm possession and transfer, it nonetheless should not be offering evidence that co-defendants were felons in possession of those weapons (which many were, in fact, charged with being). The court agrees that the government may not offer evidence that Madrid's alleged co-conspirators were felons for any substantive reasons. Firearms are well-recognized tools of the drug trade; prior felonies are not. This portion of Madrid's second motion *in limine* is therefore GRANTED. But the court grants this request with the understanding that it will not preclude any use of prior convictions for impeachment purposes, to the extent any co-conspirator testifies and the court separately allows that use.

Accordingly, Madrid's Motion *in Limine* No. 1 is DENIED as premature in part and GRANTED in part.

**B. Motion *in Limine* No. 2 [Dkt. No. 340]**

In this second motion *in limine*, Madrid argues that co-defendants' guilty pleas should not be used as substantive evidence, that any plea used for impeachment purposes must be accompanied by a limiting instruction and redactions to the plea agreement, and that the court should defer its decision on whether Arturo's prior convictions may be used for impeachment purposes. The government agrees that it will not use co-defendants' guilty pleas as substantive evidence, so that part of the motion is

GRANTED. The government also does not object to Madrid's request for limiting instructions and that plea agreements be redacted (so that they do not include factual bases, which would amount to out-of-court statements about charged conduct). Given the lack of opposition, that part of the motion is also GRANTED. Before any co-conspirator is called as a witness, if the government wishes to offer a plea agreement through that witness, the parties should meet and confer about the redactions that will be needed. The parties should also meet and confer about the limiting instruction to be used.

Finally, because the court has separately decided that it will defer decision on whether Arturo's prior convictions may be used to impeach him, it DENIES that part of the motion as moot.

### C. Motion *in Limine* No. 3 [Dkt. No. 341]

This third motion asks for a pre-trial hearing to determine whether any co-conspirator statements may be offered against Madrid under Federal Rule of Evidence 801(d)(2)(E). At the hearing on the motion, however, Madrid accepted that a pre-trial hearing was not necessary, and instead agreed that (1) the government would endeavor to present evidence of a conspiracy before offering any co-conspirator statements for admission under Rule 801(d)(2)(E), and (2) the government would identify any co-conspirator statements it seeks to offer before offering them, so that defense counsel has the opportunity to lodge an objection (and an opportunity to be heard outside the

presence of the jury) before any such statements are offered. With that understanding, this motion is DENIED as withdrawn.

Madrid's third motion separately argues that the government should not be allowed to use evidence predating Madrid's alleged entry into the conspiracy to prove his membership in the conspiracy, and that the government should not use "loaded organizational labels" such as "drug trafficking organization," a "cartel," or "the operation." Dkt. No. 341, at pg. 8. The court DENIES this aspect of the motion as premature. Whether evidence predating Madrid's alleged entry into the conspiracy might bear on whether he joined it is a matter that must be considered at trial. For example, the evidence could conceivably show that Madrid was told about the conspiracy's prior activities and that he agreed that he wanted to participate in similar activities going forward. In that way, evidence predating his entry into the conspiracy could indeed bear on whether he joined it (by showing that he understood the objectives of the conspiracy he was joining). In short, the court cannot resolve relevance questions in the abstract, but will need to consider contemporaneous objections at trial. The same goes for possible labels such as "drug trafficking organization" and "cartel"; the government recognized at the hearing on this motion that it will not use labels of this sort unless and until an evidentiary basis has been laid for them. Whether or not that basis has been laid is properly considered via objections at trial.

**D. Motion *in Limine* No. 4 [Dkt. No. 342]**

In his Motion *in Limine* No. 4, Madrid argues that because the superseding indictment does not charge him with any drug quantity, that the evidence at trial should be limited to the evidence and conduct directly attributable to him. This motion is DENIED. One of the elements of the conspiracy charge is that a conspiracy existed at all. The government is entitled to offer evidence on that question. Nonetheless, as with firearms-related evidence, the court will carefully monitor the extent of the government's general evidence of drug quantity and will consider Rule 403 objections at trial.

**E. Motion *in Limine* No. 5 [Dkt. No. 343]**

Madrid argues that the court should compel the government to produce *Giglio* information by no later than a week before trial. At the hearing on this motion, Madrid clarified that he was not seeking a similar timeline for Jencks Act material; that concession is reasonable because the court lacks the authority to require the government to produce Jencks Act material any earlier than the statute requires. *See United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (explaining that a discovery order requiring earlier disclosure for Jencks Act material is "unenforceable"); *see also United States v. Shayota*, Case No. 15-CR-00264, 2016 WL 2654410, at *6 (N.D. Cal. May 10, 2016) ("[T]o the extent the moving Defendants seek early disclosure of statements made to the grand

jury by potential government witnesses in the moving Defendants' criminal trial, that relief is barred by the Jencks Act.").

In any event, at the hearing on the motion, government counsel committed to endeavoring to produce Jencks Act and *Giglio* material by Friday, September 19, 2026. Counsel continue to meet with witnesses, however, and reports are being finalized for witness interviews that have already occurred. It is also a common feature of criminal cases that parties continue their investigations up to and through the start of trial, and ongoing investigations can produce additional materials for discovery. But the government's commitment to produce these materials in advance of trial, to the extent it is feasible to do so, "largely obviates" Madrid's requested order. *Id.* The motion is therefore DENIED.

**F. Motions *in Limine* Nos. 6 [Dkt. No. 351] and 7 [Dkt. No. 345]**

In these motions, Madrid argues that the government should not be allowed to use what he describes as inflammatory characterizations—such as "cartel," "drug trafficking organization," "gang," and "machinegun"—and that it should not be permitted to offer evidence of transactions not involving Madrid until it first shows or offers evidence that those transactions are linked to the charged conspiracy against Madrid.

As for characterizations, the government confirmed at the hearing that it would not use these characterizations unless the evidence builds up to and supports the use.

With that understanding, counsel for Madrid acknowledged that that aspect of this motion is premature and that contemporaneous objections may be raised at trial as needed. As for the requested evidence that transactions are linked to Madrid, the court at the hearing explained that to the extent the government fails to link transactions to the conspiracy charged against Madrid, that would simply give Madrid a strong argument for a "multiple conspiracies" instruction. Counsel for Madrid acknowledged that that was the appropriate way to deal with this issue.

With these understandings, Motions *in Limine* Nos. 6 and 7 are DENIED.

### G. Motion *in Limine* No. 8 [Dkt. No. 346]

Madrid's final motion concerns the impeachment of Madrid. One of his requests is that the government not be allowed to impeach him with his 2023 conviction. The court has already concluded, in response to the government's first motion, that it will rule on this issue only after hearing Madrid's direct examination. Accordingly, this aspect of Madrid's final motion is DENIED as premature.

Other parts of this motion are persuasive and properly resolved now. First, Madrid argues that the government should be precluded from using his 2019 misdemeanor conviction to impeach him. The government does not oppose this request, so the court GRANTS it. Second, Madrid argues that the government should not be allowed to use evidence of his arrest, dismissed counts, and allegations that did not result in convictions. Here again, the government does not oppose the request, and

it is GRANTED. Third, Madrid argues that the government should not offer evidence that he was on probation. That evidence would only be needed to establish Madrid's telephone number, and Madrid is prepared to stipulate to that number. With the understanding that Madrid has so stipulated, and with no government opposition, this request is also GRANTED.

## CONCLUSION

For the foregoing reasons, the court DENIES the government's Motion *in Limine* Nos. 1 and 2 as premature. It DENIES as premature in part and GRANTS in part Madrid's Motion *in Limine* No. 1. It GRANTS in part and DENIES in part as moot Madrid's Motion *in Limine* No. 2. It DENIES Madrid's Motion *in Limine* No. 3 in part as withdrawn and in part as premature. It DENIES Madrid's Motions *in Limine* Nos. 4, 5, 6, and 7. And it DENIES in part as premature and GRANTS in part Madrid's Motion *in Limine* No. 8.

IT IS SO ORDERED.

DATED: September 17, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge